NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2334

_____

WILLIAM HUDSON, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Appellant

v.

EAGLEMARK SAVINGS BANK;
HARLEY-DAVIDSON CREDIT CORP.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-10-cv-06994)
District Judge:  Honorable John R. Padova

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 20, 2012

Before:  RENDELL, FISHER and CHAGARES, *Circuit Judges*.

(Filed:  March 30, 2012)

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

William Hudson ("Hudson"), individually and on behalf of all others similarly

situated, appeals the District Court's grant of the motion to dismiss for failure to state a

claim filed by Eaglemark Savings Bank ("Eaglemark") and Harley-Davidson Credit Corp. ("HDCC") (collectively, "Defendants"). For the reasons stated below, we will affirm the District Court.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On June 30, 2007, Hudson purchased a motorcycle from Smaltz's Harley-Davidson ("Smatlz's"), a Harley-Davidson franchise dealer located in Montgomery County, Pennsylvania. Smaltz's arranged for on-site financing of the motorcycle through Eaglemark, a subsidiary of HDCC. Hudson signed a Bill of Sale, listing Smaltz's as the seller, and signed a Promissory Note and Security Agreement ("Promissory Note"), listing Eaglemark as the lender. The Promissory Note stated that, in the event of a repossession, "lender will mail a written notice of sale to you no less than ten (10) and no more than twenty (20) days (depending on the state you reside in) before selling the vehicle." The Promissory Note also stated that, upon Eaglemark's receipt and funding of the contract, the contract would automatically be assigned to HDCC.

In 2009, Hudson fell behind on his monthly payments to HDCC. On October 6, 2009, HDCC repossessed his motorcycle and sent to Hudson a Notice of Our Plan to Sell

Property ("Notice"), which indicated that HDCC planned to sell the motorcycle "at a private sale sometime after October 16, 2009."

Hudson filed his putative consumer class action in the Court of Common Pleas of Montgomery County, Pennsylvania. On December 1, 2010, Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania, asserting jurisdiction under the Class Action Fairness Act of 2005. 28 U.S.C. § 1332(d). After the Defendants moved to dismiss the case for failure to state a claim, Hudson filed an Amended Complaint. Defendants then filed a Motion to Dismiss the Amended Complaint. On May 9, 2011, the District Court granted the Defendants' motion. Hudson filed a timely Notice of Appeal on May 17, 2011.

II.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's order granting a motion to dismiss. *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 858 (3d Cir. 2012) (citation omitted). "When reviewing a Rule 12(b)(6) dismissal, we accept as true all well-pled factual allegations in the complaint, and view them in the light most favorable to the plaintiff." *Id.* (citation omitted).

III.

Because we have diversity jurisdiction over this case, we must apply Pennsylvania's law to the facts of this case. *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 46 n.11 (3d Cir. 2009) (citation omitted).

Hudson first submits that the District Court erred in finding that Pennsylvania's Motor Vehicle Sales Finance Act ("MVSFA"), 69 Pa. Cons. Stat. §§ 601-637.1, does not apply to Hudson's contract with Eaglemark and HDCC. At the District Court, Hudson argued that the MVSFA requires a lender to provide a fifteen-day notice of its intent to sell a repossessed motor vehicle, 69 Pa. Cons. Stat. § 623(D), so the Defendants violated the statute by only providing him with a notice ten days prior to the sale. We agree with the District Court that the MVSFA does not apply to Hudson's contract with the Defendants.

Under Pennsylvania law, courts first look to the language of the statute, and "[w]hen the words of a statute are clear and free from all ambiguity," courts cannot disregard the text of the statute. 1 Pa. Cons. Stat. § 1921(b). "When the words of the statute are not explicit," then courts may consider other evidence to ascertain "the intention of the General Assembly." *Id.* § 1921(c).

The MVSFA provides that "[w]hen repossession of a motor vehicle, which is the subject of an *installment contract*, is effected otherwise than by legal process, the holder . . . shall give notice to the buyer of the holder's intent to re-sell the motor vehicle at the

4

expiration of fifteen (15) days from the date of mailing such notice." 69 Pa. Cons. Stat. § 623(D) (emphasis added). An "installment contract" under the MVSFA is "any contract for the retail sale of a motor vehicle, or which has a similar purpose or effect under which part or all of the price is payable in two or more scheduled payments subsequent to the making of such contract." 69 Pa. Cons. Stat. § 603(10). The Promissory Note, which listed Eaglemark as the lender, was not an installment contract because it was not a "contract for the retail sale of a motor vehicle." *Id.* Rather, it was a contract for the financing of Hudson's motorcycle purchase. Moreover, the Promissory Note did not have the "purpose" or "effect" of selling the motorcycle to Hudson, who purchased the motorcycle from Smaltz's by signing a separate Bill of Sale. The Bill of Sale unambiguously stated that the "Dealer [Smaltz's] and Purchaser [Hudson] are the sole parties to this Order," so Eaglemark and HDCC were not parties to the contract pertaining to the sale of the motorcycle.

Hudson nevertheless argues that the MVSFA would apply to his contract with the Defendants under the "dragging the body" theory of contract interpretation. The name is derived from the concept that the motor vehicle dealer drags the customer's body to a specific lender that is pre-selected by the dealer. Under the "dragging the body" theory, Hudson's Promissory Note with Eaglemark/HDCC and his Bill of Sale with Smaltz's would be collapsed into a single transaction, making the MVSFA apply to Hudson's

5

contract with Eaglemark/HDCC. We reject Hudson's argument and hold that the District Court did not err in declining to recognize this "dragging the body" theory.

Because the Pennsylvania Supreme Court has never addressed the question of whether the MVSFA applies to "dragging the body" loans, "we must predict how the [Pennsylvania] Supreme Court would rule if presented with this case." *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010) (internal quotation marks and citation omitted). In doing so, we "must give serious consideration to the decisions of the intermediate appellate courts[.]" *Robinson v. Jiffy Executive Limousine Co.*, 4 F.3d 237, 242 (3d Cir. 1993) (citations omitted). As the District Court stated, in the only state appellate court decision addressing this issue, an evenly-divided Superior Court affirmed a lower court decision declining to apply the MVSFA to a "dragging the body" transaction. *Anderson v. Auto. Fund*, 391 A.2d 642, 644 (Pa. Super. Ct. 1978) (per curiam). Because the court was evenly divided on whether the MVSFA applied to "dragging the body" loans, the case did not establish precedent for either side of the issue. *Phila. v. Dist. Council 33, AFL-CIO*, 469 A.2d 1051, 1057, n.4 (Pa. 1983) (Nix, J. dissenting). And in examining the statutory language, we cannot fit the current transaction neatly into the definition that the Pennsylvania legislature chose for "installment contract." Thus, we cannot make the leap suggested by Hudson that would allow us to collapse the transaction so that it would be governed by the MVSFA. We do "not feel that [this Court's] proper role is to lead the state courts in the interpretation of

6

state law." *Manning v. Princeton Consumer Discount Co.*, 380 F. Supp. 116, 120 (E.D. Pa. 1974). Therefore, we decline to forge a novel path in Pennsylvania law by holding that the State Supreme Court would apply the MVSFA to Hudson's "dragging the body" loan.

Finally, Hudson submits the District Court erroneously held that his Amended Complaint failed to satisfy the pleading standard under Federal Rule of Civil Procedure 8. We disagree. Contrary to Hudson's contention, the District Court properly held that Hudson failed to state a claim that the ten-day notice was unreasonable.

A creditor must send "a reasonable authenticated notification of disposition" to all parties entitled to receive notice. 13 Pa. Cons. Stat. § 9611(b). A notification is unreasonable when it "is sent so near to the disposition date that a notified person could not be expected to act on or take account of the notification[.]" 13 Pa. Cons. Stat. § 9612 cmt. 2. Hudson's conclusory assertion that the notice was unreasonable, without facts showing how he could not be expected to act in response to the notice or take account of the notice, was insufficient to state a claim upon which relief may be granted. *See Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks and citations omitted)).

IV.

For the foregoing reasons, we will affirm the District Court's order.